UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| Ear Technology Corporation,<br><br>        Plaintiff,<br><br>  v.<br><br>Puretone Ltd,<br><br>        Defendant. | Civil Action No. _____<br><br>DEMAND FOR JURY TRIAL |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Ear Technology Corporation ("Plaintiff") files this Complaint against Defendant Puretone Ltd ("Puretone or "Defendant") and alleges the following:

**NATURE OF SUIT**

1. This is an action for damages and equitable relief arising under the patent laws of the United States, Title 35, United States Code, including in particular, Sections 271, 281, 283, 284, and 285, as a result of Defendant's acts of infringement of U.S. Patent Nos. 8,284,968 (the "'968 Patent"), 8,472,634 (the "'634 Patent"), and 9,031,272 (the "'272 Patent").

**THE PARTIES**

2. Plaintiff is a corporation organized and existing under the laws of the State of Tennessee. Plaintiff has a principal place of business at 106 E. Watauga Avenue, Johnson City, Tennessee 37601. Plaintiff is in the business of selling hearing aids, personal sound amplification devices, and related products.

3. Plaintiff is the exclusive licensee of the '968, '634, and '272 Patents, and is entitled to enforce all rights arising therefrom, including the right to file suit for infringement of the patents.

4. On information and belief, Puretone is a United Kingdom private limited company with its principal place of business at 9-11 Henley Business Park, Trident Close, Medway City Estate, Rochester, Kent, ME2 4FR, United Kingdom.

## JURISDICTION AND VENUE

5. This Complaint is an action for patent infringement under Title 35 of the United States Code. Accordingly, this Court has subject matter jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and 1338(a).

6. This Court has personal jurisdiction over Puretone under Federal Rule of Civil Procedure 4(k)(2) because, on information and belief, Puretone is a foreign corporation that is not subject to general jurisdiction in any state in the United States and exercising jurisdiction over Puretone is consistent with the United States Constitution and laws. This Court also has personal jurisdiction over Puretone because Puretone has committed acts within Tennessee giving rise to this action and/or has established minimum contacts with Tennessee such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice. Puretone has placed, is continuing to place, and has influenced the placement of infringing products, including but not limited to DefendEar DigitalX5 and DefendEar DigitalX3 hearing protection devices, into the stream of commerce, via an established distribution channel, with the knowledge and/or understanding that such products are sold and offered for sale in the State of Tennessee. In this regard, Puretone manufactures the DefendEar DigitalX5 and DefendEar DigitalX3 hearing protection devices and distributes and sells the devices to Westone Laboratories, Inc ("Westone"), which is located within the United States and which sells, distributes, and offers for sale the devices throughout the United States.

7. Venue is proper in this district for the claims against Puretone under 28 U.S.C. §§ 1391(b)(3) and 1400(b) because Puretone is subject to jurisdiction in this District and therefore deemed to reside in this District; 28 U.S.C. §§ 1391(c)(3) because Puretone is a foreign corporation; and 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## GENERAL ALLEGATIONS

8. On October 9, 2012, the United States Patent and Trademark Office duly and legally issued the '968 Patent. The '968 Patent is entitled "Preprogrammed hearing assistance device with user selection of program." A true and correct copy of the '968 Patent is attached to this Complaint as Exhibit A.

9. The '968 Patent is valid and subsisting.

10. The '968 Patent is presumed valid pursuant to 35 U.S.C. § 282(a).

11. On June 25, 2013, the United States Patent and Trademark Office duly and legally issued the '634 Patent. The '634 Patent is entitled "Preprogrammed hearing assistance device with audiometric testing capability." A true and correct copy of the '634 Patent is attached to this Complaint as Exhibit B.

12. The '634 Patent is valid and subsisting.

13. The '634 Patent is presumed valid pursuant to 35 U.S.C. § 282(a).

14. On May 12, 2015, the United States Patent and Trademark Office duly and legally issued the '272 Patent. The '272 Patent is entitled "Hearing assistance apparatus having single multipurpose control device and method of operation." A true and correct copy of the '272 Patent is attached to this Complaint as Exhibit C.

15. The '272 Patent is valid and subsisting.

16. The '272 Patent is presumed valid pursuant to 35 U.S.C. § 282(a).

17. Plaintiff marks its products that incorporate technology claimed in the '968, '634, and '272 Patents in compliance with 35 U.S.C. § 287, and has done so for at least the six years preceding the filing date of the original Complaint in this action.

18. On information and belief, Defendant makes, uses, offer to sells, sells and/or imports into the United States, hearing protection devices such as the DefendEar DigitalX5 and DefendEar DigitalX3 hearing protection devices (collectively "DefendEar Devices ") as depicted below. *See also* Exhibits D-F.

19. Defendant's activities with respect to such hearing protection devices, including the DefendEar Devices, infringe one or more claims of the '968, '634, and '272 Patents.

20. For example, the DefendEar Devices infringe claim 23 of the '968 Patent, which recites the following:

> 23. A programmable apparatus for improving perception of sound by a person, the apparatus comprising:
>
> a housing configured to be worn in, on or behind an ear of the person;
>
> memory disposed within the housing, the memory for storing a plurality of audio processing programs that may be used in processing digital audio signals;
>
> a processor disposed within the housing and connected to the memory, the processor operable to execute one or more selected audio processing programs to process digital audio signals;
>
> a selection device disposed on the housing and connected to the processor, the selection device operable by the person to select one of the audio processing programs to be used in processing the digital audio signals;

4

a digital-to-analog converter disposed within the housing, the digital-to-analog converter for generating output analog audio signals based on the digital audio signals; and

an audio output section disposed within the housing, the audio output section for receiving and amplifying the output analog audio signals, generating audible sound based thereon and providing the audible sound to the person,

the audio output section further for generating one or more audible sounds that indicate to the person which one of the audio processing programs is currently selected for processing the digital audio signals,

whereby the currently selected audio processing program can be determined without having to connect the apparatus to any external device.

21. The DefendEar Devices include a housing configured to be worn on an ear of a person, as illustrated below (see Exhibit D):



22. As explained on pages 17-19 of Exhibit D, the DefendEar Devices have multiple selectable "modes," which are audio processing programs, stored in their memory.

23. As illustrated on pages 14-16 of Exhibit D, the DefendEar Devices have a mode selection mechanism disposed on the housing, which is a selection device operable by a person to

select the mode.

 

24. The DefendEar Devices include a digital-to-analog converter, which is an inherent component of a digital hearing device.

25. The DefendEar Devices include an audio output section that provides audible sound. In this regard, the DefendEar Devices include a volume control (*see* Exh. D, p. 15) for changing the sound level.

26. The DefendEar Devices generate audible sounds that indicate to a person which mode is selected. As explained in Exhibits E and F, the DefendEar Devices provide "vocal feedback," which "vocally advises you which mode you are using."

27. The vocal feedback indicating the currently selected mode is not dependent on connection of the DefendEar Devices to any external device, such as a smartphone.

28. As another example, Defendant's DefendEar Devices infringe independent claim 17 of the '634 Patent, which recites the following:

> 17. A programmable apparatus for improving perception of sound by a person, the apparatus comprising:
>
> a housing configured to be worn on or in an ear of the person;
>
> a processor disposed in the housing for executing one or more available programs

6

for processing digital audio signals;

a digital-to-analog converter disposed in the housing for generating output analog audio signals based on the digital audio signals;

an audio output section disposed in the housing for receiving and amplifying the output analog audio signals, generating audible sound based thereon, and providing the audible sound to the person;

memory disposed in the housing for storing one or more programs for processing the digital audio signals, the memory accessible to the processor;

a switching device disposed in the housing for generating a first control signal to switch from one available program to another available program based upon an action by the person; and

the processor for ceasing execution of one of the available programs and commencing execution of another of the available programs based upon the first control signal.

29. The DefendEar Devices comprise a programmable apparatus that improves perception of sound.

30. As noted above, the DefendEar Devices include a housing configured to be worn on an ear of a person, as illustrated below (see Exhibit C):

7



31. As explained on pages 17-19 of Exhibit D, the DefendEar Devices have a processor for executing multiple selectable "modes," which are programs for processing digital audio signals that are stored in the memory of the device.

32. The DefendEar Devices include a digital-to-analog converter, which is an inherent component of a digital hearing aid.

33. As explained above, the DefendEar Devices include an audio output section that provides audible sound.

34. As illustrated on pages 14-16 of Exhibit D, the DefendEar Devices have a mode selection switching device disposed on the housing, which is a selection device operable by a person to select the mode. When a new mode is selected, the previously selected mode ceases.

**MODE SELECTION:** (Dx3 and Dx5)

Each user will have a personal preference to sound. For the best possible experience, users should take time to familiarize themselves with each program mode in varying surroundings to develop their own preferences. All programs offer the same level of hearing protection (NRR 26).


LONG PRESS UP
Incremental Mode Selection


LONG PRESS DOWN
Incremental Mode De-selection

8

35. Defendant's DefendEar Devices also infringe independent claim 20 of the '634 Patent, which recites the following:

20. A programmable apparatus for improving perception of sound by a person, the apparatus comprising:

one or more housings configured to be worn in, on or behind an ear of the person;

an audio output section disposed within at least one of the housings,

memory disposed within at least one of the housings, the memory for storing a plurality of available audio processing programs that may be used in processing digital audio signals;

a processor disposed within at least one of the housings and connected to the memory, the processor operable to execute one or more of the available audio processing programs to process the digital audio signals;

a switching device disposed on one of the housings and connected to the processor, the switching device for operating in a program switching mode in which the switching device is operable by the person to switch from one of the available audio processing programs to another of the available audio processing programs, the switching device further for operating in a volume control mode in which the switching device is operable by the person to adjust the volume of audible sound generated by the audio output section;

a digital-to-analog converter disposed within at least one of the housings, the digital-to-analog converter for generating output analog audio signals based on the digital audio signals; and

the audio output section including an amplifier for receiving and amplifying the output analog audio signals, and including a transducer for generating audible sound based

9

thereon and providing the audible sound to the person.

36. As explained above, the DefendEar Devices include 1) a housing, 2) an audio output section disposed within the housing, 3) memory within the housing for storing a plurality of "modes" for processing digital audio signals, 4) a processor operable to execute the modes, and 5) a digital-to-analog converter.

37. As illustrated on pages 14-16 of Exhibit D, the DefendEar Devices also include a switching device for switching modes.




38. As illustrated on page 15 of Exhibit D, the same switching device is also operable to adjust volume.



10

39. The DefendEar Devices also include an amplifier for receiving and amplifying the output analog audio signals. In this regard, Exhibit F explains that some modes include "amplification." It is inherent that the Devices would include a transducer for generating audible sound from the amplified signals.

40. Defendant's DefendEar Devices also infringe independent claim 7 of the '272 Patent, which recites the following:

> 7. A method for controlling a hearing assistance device for enhancing hearing for a user, the hearing assistance device having a single multipurpose control device comprising an up control and a down control, and having a processor for processing digital audio signals using multiple amplification algorithms, and having an audio output section for generating audible sound, the method comprising:
>
> (a) the user powering on the hearing assistance device;
>
> (b) upon performance of step (a), the processor using one of the amplification algorithms;
>
> (c) the user listening to audible sound generated by the audio output section as the processor processes the digital audio signals;
>
> (d) while performing step (c), the user tapping the up control a number of times;
>
> (e) upon performance of step (d), increasing the volume of audible sound generated by the audio output section according to the number of times the up control is tapped;
>
> (f) while performing step (c), the user tapping the down control a number of times;
>
> (g) upon performance of step (f), decreasing the volume of audible sound generated by the audio output section according to the number of times the down control is tapped;
>
> (h) the user pressing and holding the up control or the down control for an extended

period of time; and

(i) upon performance of step (h), the processor discontinuing use of one of the amplification algorithms and initiating use of another of the amplification algorithms.

41. As explained above, the DefendEar Devices include a processor for processing digital audio signals using multiple amplification algorithms, and an audio output section for generating audible sound.

42. The DefendEar Devices include a single multipurpose control device comprising an up control and a down control that operates using the above method.

43. As illustrated on page 15 of Exhibit D, the control device increases the volume when a user taps the up control and decreases the volume when a user taps the down control (*i.e.* "short press up" and "short press down").



44. As illustrated on page 16 of Exhibit D, the control device also changes between amplification algorithms for processing digital audio signals (*i.e.* "modes") by the user pressing and holding the up control or the down control for an extended period of time (*i.e.* a "long press up" or "long press down"), which causes a new mode to initiate and the previously selected mode to discontinue.




**MODE SELECTION:** (Dx3 and Dx5)

Each user will have a personal preference to sound. For the best possible experience, users should take time to familiarize themselves with each program mode in varying surroundings to develop their own preferences. All programs offer the same level of hearing protection (NRR 26).

**LONG PRESS UP**
Incremental Mode Selection

**LONG PRESS DOWN**
Incremental Mode De-selection

45. In 2013, Plaintiff's representative met with Puretone representatives to discuss Plaintiff's products, which included Plaintiff's patented technology. Following the meeting, Puretone purchased two of Plaintiff's Tuneamp products, which included patent markings. Plaintiff believed the purchases were intended for evaluation purposes. However, it instead appears that Puretone purchased the products for reverse engineering purposes.

46. On or about January 28, 2025, Plaintiff provided Puretone with copies of the '968, '634, and '272 patents and explained the DefendEar Devices infringe claims of the patents.

47. Defendant had knowledge of the '968, '634, and '272 Patents prior to the filing of this Complaint. Despite such knowledge of the '968, '634, and '272 Patents, Defendant continued, and still continues today, to manufacture, use, offer for sale, sell in the United States (including in this District), and/or import into the United States, hearing protection devices, including the DefendEar Devices, that infringe one or more claims of the '968, '634, and '272 Patents.

**COUNT I - INFRINGEMENT OF U.S. PATENT NO. 8,284,968**

48. Plaintiff realleges, adopts, and incorporates by reference each of the foregoing allegations as if fully set forth herein.

13

49. Defendant has manufactured, used, offered for sale, sold within the United States, and/or imported into the United States, and continue to manufacture, use, offer for sale, sell in the United States, and/or import into the United States, hearing protection devices, including the DefendEar Devices, that incorporate each and every element of one or more of the claims of the '968 Patent and therefore are covered by the '968 Patent ("the Accused Products").

50. Defendant has been infringing and continue to infringe the '968 Patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale in the United States, and/or importing into the United States the Accused Products, such as the DefendEar Devices, that embody each element of at least one of the claims of the '968 Patent and will continue to do so unless enjoined by this Court.

51. In addition to the foregoing and/or in the alternative, Defendant indirectly infringes the '968 Patent by inducing and contributing to infringement by others, in accordance with 35 U.S.C. § 271(b), in the United States. Defendant is actively, knowingly, and intentionally inducing infringement of the '968 Patent by selling, offering to sell and/or importing into the United States the Accused Products; with the knowledge and specific intent that third parties will continue to, either alone or in combination with Defendant, use, sell, offer for sale, and/or import the Accused Products supplied by Defendant to infringe the '968 Patent; and with the knowledge and specific intent to encourage and facilitate the infringement through the dissemination of the Accused Products and/or the creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information relating to the Accused Products and infringing uses thereof.

52. In addition to the foregoing and/or in the alternative, Defendant has knowingly contributed to the infringement of one or more claims of the '968 Patent under 35 U.S.C. § 271(c).

Defendant is actively, knowingly and intentionally contributing to the infringement of the '968 Patent by selling, offering to sell, and/or importing into the United States the Accused Products, with the knowledge that they are especially designed or adapted to operate in a manner that infringes the '968 Patent with the knowledge that third parties will continue to, either alone or in combination with Defendant, infringe the claims of the '968 patent, and with the knowledge that the infringing technology in the Accused Products is not a staple article of commerce suitable for substantial non-infringing use.

53. Plaintiff is being damaged by Defendant's infringement of the '968 Patent and will suffer additional irreparable damage and impairment of the value of its patent rights unless Defendant is enjoined from continuing to infringe.

54. Plaintiff has suffered damages as a result of Defendant's infringement of the '968 Patent, including in the form of lost profits, lost sales, and/or lost opportunities. Plaintiff is entitled to recover damages to compensate it for Defendant's infringing activities in an amount to be determined at trial, but in no event less than a reasonable royalty.

55. Defendant's infringement has been and continues to be egregious and willful, with knowledge of the existence of the '968 Patent, such that Plaintiff is entitled to recover its attorneys' fees and other expenses of litigation pursuant to 35 U.S.C. § 285.

**COUNT II - INFRINGEMENT OF U.S. PATENT NO. 8,472,634**

56. Plaintiff realleges, adopts, and incorporates by reference each of the foregoing allegations as if fully set forth herein.

57. Defendant has manufactured, used, offered for sale, sold within the United States, and/or imported into the United States, and continue to manufacture, use, offer for sale, sell in the United States, and/or import into the United States, hearing protection devices, including the

15

Case 2:25-cv-00141-DCLC-CRW Document 1 Filed 09/09/25 Page 15 of 20
PageID #: 15

DefendEar Devices, that incorporate each and every element of one or more of the claims of the '634 Patent and therefore are covered by the '634 Patent.

58. Defendant has been infringing and continue to infringe the '634 Patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale in the United States, and/or importing into the United States the Accused Products, such as the DefendEar Devices, that embody each element of at least one of the claims of the '634 Patent and will continue to do so unless enjoined by this Court.

59. In addition to the foregoing and/or in the alternative, Defendant indirectly infringes the '634 Patent by inducing and contributing to infringement by others, in accordance with 35 U.S.C. § 271(b), in the United States. Defendant is actively, knowingly, and intentionally inducing infringement of the '634 Patent by selling, offering to sell and/or importing into the United States the Accused Products; with the knowledge and specific intent that third parties will continue to, either alone or in combination with Defendant, use, sell, offer for sale, and/or import the Accused Products supplied by Defendant to infringe the '634 Patent; and with the knowledge and specific intent to encourage and facilitate the infringement through the dissemination of the Accused Products and/or the creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information relating to the Accused Products and infringing uses thereof.

60. In addition to the foregoing and/or in the alternative, Defendant has knowingly contributed to the infringement of one or more claims of the '634 Patent under 35 U.S.C. § 271(c). Defendant is actively, knowingly and intentionally contributing to the infringement of the '634 Patent by selling, offering to sell, and/or importing into the United States the Accused Products, with the knowledge that they are especially designed or adapted to operate in a manner that

infringes the '634 Patent with the knowledge that third parties will continue to, either alone or in combination with Defendant, infringe the claims of the '634 patent, and with the knowledge that the infringing technology in the Accused Products is not a staple article of commerce suitable for substantial non-infringing use.

61. Plaintiff is being damaged by Defendant's infringement of the '634 Patent and will suffer additional irreparable damage and impairment of the value of its patent rights unless Defendant is enjoined from continuing to infringe.

62. Plaintiff has suffered damages as a result of Defendant's infringement of the '634 Patent, including in the form of lost profits, lost sales, and/or lost opportunities. Plaintiff is entitled to recover damages to compensate it for Defendant's infringing activities in an amount to be determined at trial, but in no event less than a reasonable royalty.

63. Defendant's infringement has been and continues to be egregious and willful, with knowledge of the existence of the '634 Patent, such that Plaintiff is entitled to recover its attorneys' fees and other expenses of litigation pursuant to 35 U.S.C. § 285.

**COUNT III - INFRINGEMENT OF U.S. PATENT NO. 9,031,272**

Plaintiff realleges, adopts, and incorporates by reference each of the foregoing allegations as if fully set forth herein.

64. Defendant has manufactured, used, offered for sale, sold within the United States, and/or imported into the United States, and continue to manufacture, use, offer for sale, sell in the United States, and/or import into the United States, hearing protection devices, including the DefendEar Devices, that incorporate each and every element of one or more of the claims of the '272 Patent and therefore are covered by the '272 Patent.

65. Defendant has been infringing and continue to infringe the '272 Patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale in the United States, and/or importing into the United States the Accused Products, such as the DefendEar Devices, that embody each element of at least one of the claims of the '272 Patent and will continue to do so unless enjoined by this Court.

66. In addition to the foregoing and/or in the alternative, Defendant indirectly infringe the '272 Patent by inducing and contributing to infringement by others, in accordance with 35 U.S.C. § 271(b), in the United States. Defendant is actively, knowingly, and intentionally inducing infringement of the '272 Patent by selling, offering to sell and/or importing into the United States the Accused Products; with the knowledge and specific intent that third parties will continue to, either alone or in combination with Defendant, use, sell, offer for sale, and/or import the Accused Products supplied by Defendant to infringe the '272 Patent; and with the knowledge and specific intent to encourage and facilitate the infringement through the dissemination of the Accused Products and/or the creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information relating to the Accused Products and infringing uses thereof.

67. In addition to the foregoing and/or in the alternative, Defendant has knowingly contributed to the infringement of one or more claims of the '272 Patent under 35 U.S.C. § 271(c). Defendant is actively, knowingly and intentionally contributing to the infringement of the '272 Patent by selling, offering to sell, and/or importing into the United States the Accused Products, with the knowledge that they are especially designed or adapted to operate in a manner that infringes the '272 Patent with the knowledge that third parties will continue to, either alone or in combination with Defendant, infringe the claims of the '272 patent, and with the knowledge that

18

the infringing technology in the Accused Products is not a staple article of commerce suitable for substantial non-infringing use.

68. Plaintiff is being damaged by Defendant's infringement of the '272 Patent and will suffer additional irreparable damage and impairment of the value of its patent rights unless Defendant is enjoined from continuing to infringe.

69. Plaintiff has suffered damages as a result of Defendant's infringement of the '272 Patent, including in the form of lost profits, lost sales, and/or lost opportunities. Plaintiff is entitled to recover damages to compensate it for Defendant's infringing activities in an amount to be determined at trial, but in no event less than a reasonable royalty.

70. Defendant's infringement has been and continues to be egregious and willful, with knowledge of the existence of the '272 Patent, such that Plaintiff is entitled to recover its attorneys' fees and other expenses of litigation pursuant to 35 U.S.C. § 285.

## JURY DEMAND

In accordance with Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury on any issue in this action triable by right before a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

(a) A declaration that the '968, '634, and '272 Patents are valid and enforceable;

(b) Enter judgment that Defendant has infringed the '968, '634, and '272 Patents, and that such infringement has been willful;

(c) Preliminarily and permanently enjoin Defendant from infringing the '968, '634, and '272 Patents, pursuant to 35 U.S.C. § 283, or grant such other equitable relief the Court determines is warranted;

(d) Award Plaintiff damages in an amount to be proven at trial because of the injury suffered by reason of Defendant's infringement of the '968, '634, and '272 Patents;

(e) Increase the damages awarded to Plaintiff up to three times the amount found to be Plaintiff's actual damages, as authorized by 35 U.S.C. § 284;

(f) Award Plaintiff its attorney's fees and other expenses of litigation pursuant to 35 U.S.C. § 285;

(g) Award Plaintiff prejudgment interest and costs pursuant to 35 U.S.C. § 284; and

(h) Award Plaintiff such other and further relief as the Court deems proper.

Respectfully submitted,

EAR TECHNOLOGY CORPORATION

By: s/Michael J. Bradford
Michael J. Bradford, TN BPR No. 22689
Mark P. Crockett, TN BPR No. 19352
LUEDEKA NEELY, P.C.
P. O. Box 1871
Knoxville, TN 37901-1871
Phone: 865-546-4305
MBradford@Luedeka.com
MCrockett@Luedeka.com

*Attorneys for Plaintiff*